**No. 26844**

The City of Louisville, a municipal corporation, and Anthony Delpizzo, Vivian Dhieux, Frank Domenico, Eugene DiCarlo, Howard Berry, Lawrence Caranci, and John Waschek, in their official capacities as members of the Louisville City Council and constituting the Louisville City Council v. The District Court in and for the County of Boulder, State of Colorado, and the Honorable William D. Neighbors, Judge

(543 P.2d 67)

Decided December 8, 1975.

34

Paul A. Morris, City Attorney; Rovira, DeMuth & Eiberger, Luis D. Rovira, J. Walter Hyer, III, for The City of Louisville.

J. D. MacFarlane, Attorney General, Jean Dubofsky, Deputy, Edward Donovan, Solicitor General, Gregory J. Hobbs, Jr., Assistant, Wayne B. Schroeder, Special Assistant, Natural Resources Section, for respondents and Real Party in Interest, Land Use Commission.

Joseph C. French, Boulder County Attorney, for respondents, The District Court in and for the County of Boulder, State of Colorado, and the Honorable William D. Neighbors, Judge.

Susan K. Griffiths, for amicus curiae, Colorado Municipal League.

*En Banc.*

MR. JUSTICE ERICKSON delivered the opinion of the Court.

In this original proceeding, the petitioner requests relief in the nature of prohibition, pursuant to C.A.R. 21. For the purposes of this petition, two cases (Civil Action Nos. 75-1264-1 and 75-1265-1) have been consolidated. We issued a rule to show cause and now make the rule absolute.

In Civil Action No. 75-1264-1, the Boulder County Commissioners sought both temporary and permanent injunctive relief, enjoining the City of Louisville from enacting four annexation ordinances at a City Council meeting on May 6, 1975, and from entering into a contract to annex land. The Colorado Land Use Commission, plaintiff in the second case (No. 75-1265-1), sought to prohibit Louisville from rezoning land from agricultual to industrial and commercial and to enjoin the execution of an agreement to rezone the land and declare the property suitable for planned unit development. The Colorado Land Use Commission sought to prevent the occurrence of these acts until public hearings had been held and orders issued pursuant to the 1974 Land Use Act. *See* Colo. Sess. Laws 1974, ch. 80, 106-7-101, *et seq.* at 335.

The two civil actions were combined for an injunction hearing, and the district court granted a temporary restraining order to both plaintiffs. This order was continued in effect pending the outcome of a combined hearing on both a preliminary and a permanent injunction. Following entry of the temporary restraining order, the Land Use Commission pursued discovery and learned that the City Council of Louisville had intended on May 6, 1975, to execute an agreement to annex, rezone, and approve planned unit development. Consequently, the Land Use Commission filed an amended complaint, seeking to enjoin and restrain the execution of this agreement, pending compliance with the procedures outlined in the Land

Use Act.

The events giving rise to the instant petition began on or about April 1, 1975, when the City of Louisville initiated formal procedures to annex approximately 705 acres of land. Shortly afterwards, the City Council unanimously approved and ordered first publication of the annexation ordinances, as well as an ordinance to rezone the land from agricultural to industrial and commercial. A public hearing on the proposed ordinances was scheduled for May 6, 1975, at the conclusion of which the City Council was to vote upon adoption and final publication of the ordinances.

Meanwhile, the City of Louisville, in accordance with the requirements of the Colorado Planning and Zoning Act,[1] notified the Land Use Commission of the pending zoning change. The Land Use Commission reviewed the plan of the City of Louisville and resolved that the city, in the event of annexation, should undertake land use planning with respect to two areas of statewide interest — a natural hazard area and a mineral resource area.[2] The Commission also specified two activities of statewide interest — site selection of a new community and site selection of major new or extended water and sewer lines.[3] The Commission, on the basis of its findings, requested Louisville to defer adoption of the annexation and rezoning package until the areas and activities of statewide interest had been considered at a hearing as required by Colo. Sess. Laws 1974, ch. 80, 106-7-407 (1)(a)[4] and Colo. Sess. Laws 1974, ch. 80, 106-7-404.[5]

In spite of this request, the Land Use Commission asserts that Louisville intended to enter into an agreement on May 6, 1975, with a land developer, which would provide for annexation and rezoning of the 705 acres of land. Incorporated in this contract were provisions contemplating planned unit development of the land the city intended to annex. Coincident with this assertion is the fact that the proposed annexation ordinances to be considered at the public hearing on May 6, 1975, contained emergency clauses which set forth that the proposed annexation was to become fully enforceable and effective five days after passage and publication of the or-

---

[1] Pursuant to Section 31-23-125, C.R.S. 1973, a municipality is required to notify the Land Use Commission, prior to approval of any zoning change, "[w]henever . . . commercial or industrial activity is proposed which will cover five or more acres of land . . . ."

[2] The Land Use Act provides that the Land Use Commission may on its own initiative "submit a formal request to a local government to take action with regard to a specific matter which said commission considers to be of state interest within the local government's jurisdiction." Colo. Sess. Laws 1974, ch. 80, 106-7-407 (1)(a) at 349.

[3] The major areas of statewide interest are catalogued in Colo. Sess. Laws 1974, ch. 80, 106-7-202 at 341-344. Activities of statewide interest are listed in Colo. Sess. Laws 1974, ch. 80, 106-7-203 at 344.

[4] This statute provides that after receipt of the request of the Land Use Commission, the local government shall publish notice within thirty days and hold a hearing within sixty days pursuant to section 106-7-404, and then issue an order thereunder.

[5] This section defines the procedures that a local government is to follow before designating an area or activity of state interest and adopting appropriate guidelines.

dinances. The injunctive relief granted by the district court prevented Louisville from holding the public hearing on the annexation and rezoning ordinances, and the contract was not executed.

■ Ordinarily, a court may not enjoin or restrain the exercise of municipal legislative power except in extreme cases or under extraordinary circumstances. In *Lewis v. Denver City Waterworks Co.*, 19 Colo. 236, 34 P. 993 (1893), we said:

"[A] city council or board of trustees of an incorporated town, when acting, or proposing to act, in a legislative capacity upon a subject within the scope of its powers as conferred by its charter or by the general laws of the state, is entitled to immunity from judicial interference. It is true, the municipal legislative body may adopt an illegal ordinance; so the state legislature may enact an unconstitutional statute; the remedy is the same in either case. By proper and timely application to the courts the enforcement of the unconstitutional statute, as well as the enforcement of the illegal ordinance, may be restrained or corrected.

. . . .

"*It is an exceedingly delicate matter for the courts to interfere by injunction with the action, or contemplated action, of a legislative body in any case*; and such interference cannot be justified, except in extreme cases and under extraordinary circumstances."

■ Both annexation and zoning are legislative functions. *See City of Littleton v. Wagenblast*, 139 Colo. 346, 338 P.2d 1025 (1959), and *Nopro v. Town of Cherry Hills Village*, 180 Colo. 217, 504 P.2d 344 (1972), respectively. A court generally should not enjoin the enactment of an annexation ordinance but may, under proper circumstances, enjoin the enforcement of the annexation ordinance. *See City and County of Denver v. Board of County Comm'rs*, 141 Colo. 102, 347 P.2d 132 (1959); *see also City of Littleton v. Wagenblast, supra.* The Colorado annexation statute expressly provides for judicial review, but it also provides that review "[i]n no event shall . . . be instituted prior to the effective date of the annexing ordinance by the annexing municipality." Section 31-8-116(1)(a), C.R.S. 1973.

The Land Use Act provides that after a public hearing, a local government may designate matters of state interest within its jurisdiction. Colo. Sess. Laws 1974, 106-7-401, ch. 80 at 347. Once a matter has been designated as one of statewide interest, the local government must develop guidelines for the administration of the matters designated to be of state interest. Colo. Sess. Laws 1974, 106-7-402, ch. 80 at 347. Though the local government is vested with the responsibility for designation and administration, the Land Use Commission may initiate the process by formally requesting the local government to take action. Colo. Sess. Laws, 1974, ch. 80, 106-7-407(1)(a). Subsection (b) of 106-7-407(1) then provides:

"(b) After receipt by a local government of a request from the Colorado land use commission pursuant to paragraph (a) of this subsection (1), *no person shall engage in development in the area* or conduct the activity specifically described in said request until the local government has held its hearing and issued its order relating thereto."[6] [Emphasis added.]

The definition of "development" is found in Colo. Sess. Laws 1974, 106-7-102(1):

" 'Development' means any construction or activity which *changes the basic character or the use of the land* on which the construction or activity occurs." [Emphasis added.]

The City of Louisville, having received a request from the Land Use Commission not to engage in development on the 705 acres of land, was required to comply with this request until a hearing was held and an order issued in accordance with section 106-7-407(1)(b).[7] The district court thus enjoined what it conceived to be "development," stating:

"Under the facts presented at this hearing on the Motion for a Temporary Injunction, the Court finds that the *rezoning and annexation* of the magnitude here clearly *will affect the character or use of the land.* The change from agricultural to industrial and commercial *zoning constitutes development."* [Emphasis added.]

The petitioner contends, and we agree, that "development" contemplates more than annexation and rezoning. Annexation, in and of itself, does not change the basic character or use of the land. Neither does zoning effect such a change. Both annexation and rezoning may prepare a proper starting point for or a climate conducive to development activity, but in and of themselves, they do not constitute development within the meaning of the Land Use Act. In our opinion, "activity which changes the basic character or the use of the land" (*i.e.* "development"), necessarily implies some amount of overt physical action upon the land or an activity which makes such overt physical action imminent. Annexation and rezoning neither amount to overt physical action nor do they threaten the immediate occurrence of such action.

Other factors, however, not taken into consideration in the district court's order, lead us to suspect that imminent, overt physical activity was about to be undertaken on the 705 acres of land. The City of Louisville included the emergency provisions in its proposed annexation

---

[6] Colo. Sess. Laws 1974, 106-7-407(1)(c) at 349 provides that upon the failure of the local government to make designation or adopt guidelines, the land use commission may seek judicial review by a trial de novo in the district court. In the pendency of that action, "no person shall engage in development in the area or conduct the activity specifically described in said request except on such terms and conditions as authorized by the court."

[7] Section 106-7-407(1)(b) prohibits development by a "person" during this pendency period. The City of Louisville, however, is regarded as a "person" within the meaning of the Land Use Act. *See* Colo. Sess. Laws 1974, 106-7-102(6) at 336.

ordinances providing that the ordinances were to become effective within five days after passage. Furthermore, the Land Use Commission asserted that on May 6, 1975, the City of Louisville intended to enter into a contract with a development company, and that the contract contained an express provision relating to planned unit development. This allegation, together with the five-day emergency provision in the proposed ordinances, do more than simply forecast the winds of development. Discovery proceedings developed a factual foundation for the allegations made by the Land Use Commission. However, until annexation is effected, the City of Louisville does not have jurisdiction and could not control or cause the development of the 705 acres, and the trial court lacked jurisdiction. Moreover, the Boulder County Commissioners did not have standing, and the trial court did not have jurisdiction to enter an injunction on their behalf.

 Accordingly, we make the rule absolute. If the City of Louisville annexes or rezones the 705 acres in issue and thereafter permits or attempts to develop the property, injunctive relief will be available to the Colorado Land Use Commission. In this case, a hearing is required by the Land Use Act, as a prerequisite to development of the land, and any attempt to develop the land without a hearing can properly be enjoined. The trial court did not consider the request for an injunction against execution of the planned unit development agreement. As a result, that matter is not before us, and the rule we make absolute does not relate thereto.